Number 13, 4654. Thank you. May it please the Court that I am performing for Appellant, United States, Secretary of State by request of the U.S. Supreme Court. That would be granted. Thank you. And so what's the difference between a knowing violation and the lesser violation where you don't face debarment and the substantial penalties? A knowing violation would then be one where, like in this case, the regulated entity admits that they knew of the regulation, that it applied to their business practice, and they had been advised by the Department of Labor on two prior occasions that they had been violating the Post-Appearance Requirement. Two prior occasions? Yes. Over what years? There was an enforcement action by the Wage and Hour Division in 2001, which called the agency... Against Camo? Against a predecessor entity. Who made a factual finding of a predecessor entity? As a matter of law, their predecessor entity. Where is that in the record? I didn't see it in the record. Well, it's the same cast of characters. Oh. So saying it's the same cast of characters is enough for legal liability? Yes. What case support do you have for that proposition? Well, it's a knowing violation. Therefore, the individuals who are part of the local entity, the authorized actors... What case says that?           Thank you. It did not because the board did not have an issue with a commuter-based credibility determination. What happened in this case is that the board accepted the basic factual findings of the AOJ as determined by the stipulated facts from the parties during proceedings and the testimonial evidence, and re-embedded evidence on administrative appeal, which as well as might come in the APA. The AOJ also emphasized that the company kept meticulous records and found it implausible that the company would have meticulously documented its willful violations. Did the ARB address that issue at all? They did discuss that issue, yes. Where and what did it say? I believe in Administrative Record 405. That's also page 405 in the ARB's decision. And it also referenced all the stipulated facts in page 7. So that's in its procedural history. It's not in its analysis, correct? It didn't specifically discuss that detail in its analysis. But it did. Did it discuss it at all in its analysis? In the procedural history. But not in its analysis? But not its analysis. But again, So that was of the three legs of the stool upon which the AOJ relied, then the ARB did not even address two of the three, correct? Well, it didn't have to address that issue specifically because the stipulated facts, as indicated by the Administrative Proceedings, in conjunction with the undisputed testimonial evidence, was weighed by the Board of Administrative Appeal, and they made the ultimate factual finding, which is well in light under the APA, that those stipulated facts and testimonial evidence amounted to a knowing violation. Given the two prior enforcement actions, well, we only need one prior enforcement action, and the admission by the company that a new regulation applied to their business practices. And did the ARB also, in its recitation of the testimony, know that Ms. Pasram specifically went asked, do you recall the investigator saying it was OK so long as you document your efforts? And her answer was, I don't recall that, but I don't remember him saying it's not OK. Didn't the ARB specifically note that testimony and then decided not to credit it as an excuse for noncompliance? I'm not sure what you want to mean by credit. Well, recognize that those words were uttered by the witness and determine that that explanation was insufficient to mitigate willfulness as defined under the statute. Correct. Just to be clear, because the appellee has made a significant point in this in their briefs and proceedings below that the ARB failed to take issue with a demeanor-based credibility determination. That's not what happened here. The board acknowledged all the testimonial evidence and stipulated facts. It didn't take issue with that credibility determination. What it did, what the board did when it administrated the appeal was to re-weigh all of those undisputed facts and found, as it might, as a delegate of the Secretary of Labor, that those undisputed facts amount to an annoying violation. That's exactly what happened in this case. And the court may not re-weigh those facts under the substantial evidence standard review, which is very deferential. There must be at least one piece of evidence in the administrative record. If not, it compels a contrary result. Neither the appellees nor the district court identified any such piece of evidence that would compel a contrary result. Well, I thought the district court identified the board's failure to consider some of the things that we just talked about. So wouldn't that counsel in favor of a remand? And the board might reach the same conclusion on remand, but doesn't it weigh in favor of a remand? And that we should tell the board to consider these calls that the ALJ deemed important. First, I apologize for the misstep. I didn't want to credit the district court's opinion, because under the APA standard review, this court reviews fresh the administrative proceedings and knows no deference to the district court's decision more. So the district court's opinion is irrelevant as a matter of law. But secondly, I don't think there's a need for a remand as a known issue, because the board, in at least its recitation of the procedural history, showed that it analyzed the full administrative record and did not share a pick on the facts that would be held in context in these proceedings. It reviewed the entire record. What it did was it replayed the evidence and found that as a matter of law, the evidence amounted to a known violation. Therefore, I don't think there's a need for a remand. Now, if asked for a remand, if and only if this court disagrees with the ARB in its legal determination that there was a known violation, because the board didn't yet assess, because it didn't need to, the component of recklessness and whether, in fact, the evidence in the record amounts to a reckless disregard. Let me take you back a little bit to what Judge Schwartz had mentioned at the outset about the standard. Can you give us an example of when a violation of the posting requirement is not willful? Isn't every violation then willful under your definition? Well, supposing you had a completely pedestrian employer who was completely ignorant that a regulation existed. Well, but don't we have here, I mean, you have an interesting record here. You've got an employer who really meticulously took great pains to show all their efforts to comply. It sounds like that's something that was never considered by the agency, really. I mean, and they readily turned over their records, when I don't think they really had to. It wasn't part of the investigation. They were really up front about it, said, look at all the things we tried to do. And you came back with something, I think, that surprised them. Well, it shouldn't have been surprising, because it had only been in 2005. Parsham testified that your employee said that you must try to post. And when he was asked that question, he testified that he didn't recall exactly what he said. Well, that may be true, but that's set aside for us. Because without Parsham, you can't get the willful violation. Now, we have Karani, which is an employee of the agency. In fact, since 2005, Karani was a designated official of CAIMO, who was still working for the company when the most recent crime violations occurred. He came back with Wage and Honor Division investigator Mueller, and really testified in uncontroverted testimony. He came back with Karani in particular in November 2005 and December 2005. On both occasions, he was uncovered. And he told Karani that a mere attempt was not the denial. But the posting of this requirement is a substantive denial. It achieves a significant purpose in the program by informing U.S. workers that there is a foreign worker at a job location, and it is a highly regulated program where the employer must agree to certain wages and working conditions. And if those are violated, U.S. workers are given an opportunity, a vital opportunity, to apprise the agency that there's potentially a violation, which allows the employer to bring the agent back into enforcement action. That's substantive requirements of five days by CAIMO. And investigator Rodino told Karani that he knew on certain terms in 2005. We will maintain this testimony on cross-examination. So you can retranscript the ALJ query. Investigator Leo brought this issue as well. And what we get from Leo's testimony is that he told CAIMO they had to post a notice. They did not. If the third-party employer bought the posted notice, that, in fact, it could not send the agent when the employer said that was a violation. What if they posted a notice and then the third-party took it down? Is that a willful violation? Well, that's not the case here, because they know. I know. That's why I asked that. It's a hypothetical. I suppose it could be. Well, what if it's. I suppose it could be an acrobot. It might be blue or. No, no. So they took it down. No, I mean, CAIMO. I mean, one of the things that's a little bit confusing to me and perhaps caused me to question the whole set-up is this lettering, right? CAIMO gets the H-1B visas, acquires them, and then hires a company. And then that company is an intermediary that places them at the end-users of the workforce. Is that right? That's correct. So if the workforce where the H-1B workers are employed just decides to take down the things that were posted by CAIMO, is CAIMO a violation? And is that a willful violation? I suppose in that hypothetical, a third-party intervenes, and that intervention took place outside the knowledge of CAIMO, there'd possibly not be a willful violation. And of course, just to be clear, that's not what happened here. CAIMO never did the same thing as this. All right. But what if CAIMO sends the notices to those third parties and then says, we're going to post these? And then it doesn't happen. I guess what I'm asking is, is CAIMO obliged to drive around and keep a flyer on each of these sites and visually inspect them to make sure that the notices that they send around are actually posted? Well, I'm not going to commit to an answer one way or another. But what I can say is that they at least need an assurance from the third-party employer that the posting has been placed in compliance with the regulation. I know that they need to get visual inspection. But they at least need to have insurance from the person that has control over the work environment. That never happened here. But what about the middleman? Did the department punish the middleman? Because it would seem they're at fault here, too, no? Well, it's not their interest when they leave. OK. So the regulation technically doesn't apply. It doesn't apply, no. OK, so is it the agency's view that this is sort of a layering and sort of a game playing by the CAIMOs and other companies like them? They put these intermediaries in the middle. And then with a wink and a nod, they don't really pay attention to whether the notice gets posted at the end-user site? I don't know that I can speak to any allegations of concealed intent. All I know is what happened. CAIMO admitted that it just didn't post its notices. Now, what their ultimate motivation, and I have no idea, of course, they did in testimony, both Parson and their own investigator, when he reported as his communications with the various parties at CAIMO, that they evolved because they said that this was a wondrous obligation. They found it to be burdensome. A burden or not is a regulatory requirement. I'm wondering what the actual Congress mandate is. It's not something you all just came up with out of someone's desire. I see I'm out of time. Yes. Thank you, Counselor. May I please have the floor, Mr. Colman? Thank you, Your Honors. I'm William Stock on behalf of CAIMO Technologies. If I might interject, I don't even know where you left off. The H-1B scheme allows for employers to bring in employees in specialty occupations, such as the computer programmers who are employed here. Very frequently, what we see is that an end client, such as the federal loan, such as the large bank, will set a prime contractor and say, we need a project done. That prime contractor will only have to go out to certain subcontractors for various resources that they need. And so CAIMO Technologies will frequently be in a position of being a subcontractor or a sub-subcontractor, at which point it may become aware of an ultimate employer where a posting notice might have to be done only because of several years. So this delay rate is fully set upon you. It's not something your client has initiated? Correct, Your Honor. It would be typically because of the size and scope of some of these IT projects that there would need to be several years. But we still have the obligation to post. Absolutely, Your Honor. We don't deny that. We want to focus attention on the fact that the Department, in this case, has decided to charge not just the willful violation, but not to charge under the section of the willful violation, which would be reckless disregard of the regulatory practice. They've said that this is a known violation, which we would say that you have to show that the employer knew his course of conduct wasn't by no chance. Well, now, look. First off, it's a very low hurdle, I mean, the substantial evidence standard. But if you've got at least one, perhaps two warnings to your client about the third-party posting, your client apparently gave assurances it would comply, how can these violations not be willful? Your Honor, you would say that these violations might rise to the level of substantial. They certainly are violations. But you have to look at this key factor, which the ranking found compelling and which the ALJ found compelling, that in 2005, Mr. Riegel, who was the Department-related investigator, and Mr. Parson and Mr. Bernini, who was outside counsel for cable technology at the time, had a discussion about the posting department, about this laboring effect, and about the fact that cable technology is giving their posting notice to an intermediary who, in turn, refuses to give it on to the other client. And how did that develop? Well, what about the testimony about the... I forgot, it was Mr. Ring from the Department of Labor who said, well, then don't put your people there if you can't be assured that you're going to have a posting there. That's certainly not the Department's position currently, that you cannot, you know, that they are being very clear that employers have the obligation to withhold the aid from the employees. And that was not today. They said that the testimony reflected their position. Correct. I think to the extent we're going back to the experience that happened to the predecessor company, to the experience that happened to cable technologies in 2005 in the original investigation, the Department focused on these issues of whether employees were key in their workforce, not so much on the posting requirements. And they would say, well, you have this, you know, you have a... you underpaid someone X amount of dollars, and by the way, don't buy a posting there. So it was not... Well, that may have been the focus, but Mr. Forney just advised us that we told Gorelli in 2005, you must post. Is that not right? I think you have to go back to the transcripts and talk about the fact that Gorelli said, well, that's your legal position, and we don't necessarily agree with that. We think that there's an obligation, because again, if you're in the statutory language, it talks about you have to notify the employee. Well, cable technologies has an employee who it has notified of the terms of this LCA. But the notice is going to the employee of the company where the H-1B employee is being placed. That is the department's position. That's what the statute suggests. Yes, that's what the statute says. You've got to notice at the place of employment, meaning where the H-1B worker is going to be placed. That is correct. But the question is not where the notice must be placed, but to whom it must be placed. Well, it's directed to the employees of the placement location. So those employees know that folks who are participating in this program are taking jobs at that location. I would submit that the statute is not entirely clear on that. Certainly it has to do with the department's enforcement position that the purpose of the notice requirement is to let third parties know of the terms and conditions of an employer's relationship with their employees. Well, is there anything clear in the statute that says so long as you try and you document it, that's enough? There's nothing in the statute that permits that. And even if it did, wouldn't that be opening up a loophole saying, oh, we tried, we'll document it, we'll avoid a willful misfinding? I think what you have to look at is that the statute provides a three-tier series of sanctions. For a violation, there would be no department and no subordinate carrier. And you know you're liable for that. Exactly. But what about the next one? Then that would be a substantial violation where there's a one-year department and so many exact penalties calculated at a certain level. And then the third level, the most extreme, is the willful violation where it's a two-year department and the civil demonstrating penalties are higher per violation. So it's very similar to the Fair Labor Standards Act where the original law was standard that's incorporated into the regulations. You have the two-year statute of limitations that applies to all violations, but a three-year statute of limitations that applies to the willful violation. The understanding being that where there is this scaling, there needs to be a difference between even a substantial violation of the regulations and a willful violation of the regulations. Well, here we had it 72% of the time there was noncompliance. 72% of the times that there were requested with regard to this particular span of time. There would have been other reviews. But for the handful we're looking at, this 60-some-odd number, 72% of the time there was no posting. You would agree that's substantial? I would not be prepared to make that answer. It doesn't probably go forward. Well, you're the one that's got the battle-hardened answer. Absolutely, Your Honor. And the ALJ found that it wasn't substantial either. And so we would actually... And the ARP opted to punt that issue. So we would say that if they send this to our field, it's unnecessary to review them. We're not prepared to acknowledge any viability beyond what the ALJ had. Again, we've got the substantial evidence standard. We're looking at the ARB's decision. How do we not affirm it? We can credit all the Department of Labor's evidence, maybe none of yours. It's a very high bill. How do we not credit what the ARB did? Under the substantial evidence standard, the court must be sure that the agency considered all type of evidence. And there is the elephant in the room that the ARB refused to consider, and that is the change in practice in 2005 in consultation with the Department of Labor. When they changed their practice fundamentally and documented what they did for three full years before the Department of Labor came back to them and said, no, we didn't say that. Practice moved out. So her testimony about her subjective belief that she was in compliance, that should be let them off the hook, at least for the willfulness part? No, I don't believe that it was. I don't believe that her subjective belief is the key issue. The key question is, did the company know it was violating the statute? And I submit that in a situation where the company intentionally puts together a package of documentation, which is the only evidence on which the Department can rely to find this willfulness, they create the records, which the Department now says are evidence of a willful violation. And in that situation, it defies logic to think that they would have done that knowing that they were documenting on their own. Maybe yes, maybe no, but I thought your argument was real and worthy of the answer because the ARB didn't even address it. Is that the crux of your argument? The ARB certainly left out that key piece in its consideration. They looked at the past history. They did not delve into the transaction immediately around the 2006 change of practice. And they looked at the fact that this employer was a participant in this program and he did the practice repeatedly. And they said, that is not. They knew the regulation, and therefore they knew that they did violate the regulation. And I would say that that's the leap of logic that this Court takes again. But the ARB did acknowledge the testimony that was offered to explain we kept these records and also acknowledge the fact that that same witness testified, nobody told me it was okay, nobody told me it wasn't okay. So it didn't ignore it. The ARB didn't ignore that fact. You're just disappointed that they didn't embrace it. I think that the ARB, in their discussion of what testimony was offered, certainly did recount the testimony the person gave me. But then in their discussion of why that testimony showed no violation, they completely left it out entirely. Interesting. Thank you. Can I ask you a practical question, which may not be relevant to the actual legal issues, but with the penalty that's been proposed, knowing your company is almost 90% H-1B employees, is this basically a death sentence for the company? It absolutely is a death sentence for the company, Your Honor, because the Immigration Service now takes the position not just that this H-1B may have to be posted each time this little bar is lit, but Your Honor, it's not a penalty against new employees coming in. It's really to continue to undermine the current workforce. Okay. And in fact, in order to obtain compliance, the company has to refile applications every time a new project comes up for one of its employees. And so this would be a death sentence, because immediately then we would be able to move people around anymore. Do you have any cases that would demonstrate that this effort to comply would be sufficient to undermine a finding of lawfulness, as lawfulness is used in this statute? Your Honor, I don't think it's been substantially dealt with, at least in this circuit, on the mere question of whether or not attempts to comply or a new faith belief that any application that a person actually never does in compliance with the law. I don't believe that that's going to come forward, as of yet. And I take it then you're not relying on the provision of the statute that talks about sort of technical errors. You're not relying on that, because that's not really this case. We would argue that it's important to take good faith efforts into account when determining if a violation is known, because, again, the question is not, did the employer know that there was a regulation? That is the ARB's position. The question is whether the employer knew that this was incumbent violating the regulation. In which case, what they know is to comply with the regulation. You're talking past each other, it seems, on that. Right. You're defining it as, did we know what we needed to do to comply? It may seem to be defined as, did you know what the rule was? Is that a fair description? In fact, I would say that if there had been no records of the posting, if they had opted to simply say, well, this is what we do with our creating those records, that there would be a very substantial basis to say the omission of the creation of required records can be evidence of willful disregard of the regulatory requirement. But here, they engaged in a course of conduct to document their course of conduct. And their claim is that we all told us to do that. Their claim is that post-consultation with the Department of Labor and after considering those realities, they came up with a strategy which they believe met the Department of Labor's concerns while also being compliant. And Real says what on that? I never told them. I don't remember. What does he say? Real testified that he did not remember that exact conversation and did not remember the exact course of the discussions that he had in 2006 when the hearing was called in 2007. But did he also say, I would usually or typically tell people that they had to accomplish the posting, that trial wasn't enough? He certainly did, but I think that it goes beyond that because it gets into a very, a question of the, again, what does one have to do to post? Is it sufficient to put out an intro on that site that could be visible by anyone in the world? Is it sufficient to do a physical posting? It's similar to that in that it's about a means to meet the requirement, not that it was a requirement. So certainly I would credit Mr. Real's testimony that he always discussed that there was a posting requirement. But he was not able to address the key issue of how was it that you were going to meet that posting requirement at a department. Anything more, counsel? No, thank you, Your Honor. Thank you. Thank you. Mr. Thorn, will you start by addressing what I just addressed to Mr. Stock? Mainly the fact that there seems to be a difference as to what's required. They say we didn't know how to accomplish the rule and the department is saying it's enough that you knew there was a rule. The government's primary position is that you admit that you know the existence of a rule that applies to your business practices. That's fair enough. But that's not the case. The case is even worse. Farmer labor cannot be obstructed. KMO. You've been setting aside a 2001 enforcement action about acquiring an entity. You're talking about KMO aside. Discussions were had between the Department of Labor and authorized individuals in the company. They were the labor outside counsel. Well, he was specifically designated by the company as their representative on this issue, in compliance issues. And they stipulated to that fact. They did. And Investigator Reel had two conversations with the authorized agent. In person and in the telephone. Did the ARB's opinion mention that? It mentioned... In the analysis section. Not in the personnel section. Well, I mean it in a personal sense. But it didn't say it stipulated... stipulated the facts. Amounting to a 9-5 motion. No, but did it say that... Did it find as a matter of fact or did it reference this conversation you've brought to our attention between Reel and Granny? Not this specific. So then I would shatter it. We don't have to revamp it because it's not part of the decision. No, I mean it is. The board's decision is that the... the stipulated facts the company admitted range out of the repeatedly notified company over several years of its efficient postings before 2006. The board doesn't need to recite... No, that's past postings. I'm asking for a finding that this fact seems important to me that you make a persuasive argument if it's in there that that Reel told... You're saying... Set pastram aside. Reel told outside counsel the authorized agent for CAMO you're not in compliance with the rule unless you actually post. Is that something that the ARB relied on? Yes. And where... It's on page... I mean it's in your recitation of the history but more specifically to the point. It is discussed in admittedly a persuasive analysis and nevertheless the analysis... All right. Just read it. It's so short. It's two paragraphs of analysis. Tell me what it says. I would... What do you rely on? I submit to you that if bottom page 7, that's page 7 of the board's decision, it's also in the district archive page 7. It reads CTIs, that's CAMOs admissions established and violated the posting requirement 67 times from 2006 to 2009 within a range of an hour repeatedly notified over several years of its deficient posting before 2006. That includes Reel's... Excuse me. Investigator Reel's discussion which was admittedly stipulated facts. So all of those prior violations didn't involve the company engaging this course of conduct of attempting to post and keeping meticulous records of its efforts to do so. That only happened after what you claim to be the second violation, correct? There's no evidence of the company engaging that course of conduct until after the second violation? I dispute the premise. The premise is it's submitted by the police. They had the same... They changed their business practices after they met with Reel in 2005. That's just not true. The only change was that they previously documented their violation of the regulations. But their testimony, Parswood's testimony, is that's what we thought we needed to do to comply. Well, that was Parswood's mistaken belief, but not what was instructed to the line. Moreover, Parswood herself admitted during her testimony in its Administrative Record 309 when she was discussing how the company attempted to post notices before 2005. It was the exact same practice that was done post-2005. And the only difference is that, oh, now we keep records. But this is absurd. I mean, what would the Department of Labor need to do? Comes out and tells you they'll send you a letter, counsels you, and then... Isn't it absurd that a company would meticulously record its guilt? Can you cite another case? The Department of Labor's involved in a lot of these cases. How many cases do the parties very carefully produce a paper trail of their guilt that's going to put them out of business? Well, I don't know the one in this particular program. I think we did cite Casper Wire, which is out of PC-268-1030-1129. I believe something very similar happened in the Occupational Health and Safety context, where a regulated entity had documentation that it failed to comply with regulation, and they tried to use that as a defense. I don't believe that that was discussed in that case at that point. So there is some fault. What would be the consequence if we were to have a circumstance where we were to say, so long as you document your records, that's enough. What would be the consequence on your ability to enforce? I'm sorry? What would be the consequence if we were to say, so long as you document, that's fine. Would that gut the clear language in the statute that says you must post? Oh, yeah. It would completely render ineffective the statutory requirement. I mean, I do need to take issue with Pelham's counsel's representation about the statute. The statute actually says that employees similarly employed in the occupational age when the individual was working must be notified by the posting. The statute's clear. If that weren't even clear enough, the regulation couldn't be even clearer. In fact, there's a parametric one where the regulation says you have to post a notice even if you're sending it to a third-party website where you don't have control over the website. What more can the Department do? Isn't the Internet posting sufficient? Well, there could be an Internet posting. There are laws that govern electronic postings, but that's not an issue in this case. They didn't even try that. They simply said that they were going to attempt a physical posting or something. Anything else? There's no more questions? Thank you, Senator. We'll take the case under advisement.